UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re:*<br><br>22 FISKE PLACE, LLC,<br><br>　　　　　　　　　Debtor. | Bankruptcy Case<br>No. 15-11410 (SCC)<br><br><br>21 Civ. 8087 (KPF)<br>21 Civ. 8090 (KPF)<br>21 Civ. 8093 (KPF) |
| NICHOLAS GORDON,<br><br>　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>IAN J. GAZES, *Chapter 11 Trustee*, and<br>GAZES LLC,<br><br>　　　　　　　　　Defendants. | Adversary Proceeding<br>No. 21-01002 (SCC)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

Now before the Court are appeals of Nicholas Gordon ("Appellant") from

three orders issued by Judge Shelley C. Chapman of the United States

Bankruptcy Court for the Southern District of New York. The first challenged

order (the "Sanctions Order") imposed sanctions against Appellant's counsel,

Brent Chapman, Esq., and denied Appellant's cross-motion to disqualify the

chapter 11 trustee, Ian J. Gazes ("Trustee" or "Appellee"). The second

challenged order (the "Interim Fee Order") granted interim compensation to the

Trustee's Special Counsel. The third and final challenged order (the "Dismissal

Order," and together with the other Orders, the "Bankruptcy Orders")

dismissed Appellant's adversary proceeding.[1]  Also before the Court is Trustee's motion to dismiss Appellant's appeals, which motion was filed in lieu of an appellate brief.  For the reasons set forth below, the Court grants Trustee's motion to dismiss all three of Appellant's appeals.

## BACKGROUND[2]

The Court assumes familiarity with the history of this case, much of which is outlined in the Bankruptcy Court's Memorandum Decision dated August 11, 2021 (Bankr. Dkt. #510 (the "August 2021 Decision")).  The Court thus provides a summary only of the facts necessary to resolve the instant appeal.

### A.   Factual Background

Appellant Nicholas Gordon is the sole member of 22 Fiske Place, LLC (the "Debtor").  (August 2021 Decision 3).  The Debtor is a limited liability company formed under the laws of the State of New York.  (*Id.*).

---

[1]   The Sanctions Order is the subject of Case No. 21 Civ. 8087 (KPF); the Interim Fee Order is the subject of Case No. 21 Civ. 8090 (KPF); and the Dismissal Order is the subject of Case No. 21 Civ. 8093 (KPF).

[2]   The Court's consideration of this motion is limited to facts presented in the record below.  *See In re Ampal-Am. Israel Corp.*, 554 B.R. 604, 617 (S.D.N.Y. 2016) ("[T]he district court may not consider evidence outside the record below.").  Accordingly, the facts set forth in this Opinion are drawn from the record specified in Appellant's designation under Federal Rule of Bankruptcy Procedure 8009 (21 Civ. 8087, Dkt. #2; 21 Civ. 8090, Dkt. #3; 21 Civ. 8093, Dkt. #3) and the docket of the bankruptcy case, No. 15-11410 (SCC) (Bankr. S.D.N.Y.) ("Bankr. Dkt.").  The Court refers to the record in the underlying bankruptcy case using the convention "Bankr. Dkt. #[ ]."

Except where otherwise noted, the Court's record citations are to the docket of the lead case, *In re 22 Fiske Place, LLC*, No. 21 Civ. 8087 (KPF).  For ease of reference, the Court refers to Appellee's memorandum of law in support of his motion to dismiss the bankruptcy appeals as "Trustee Br." (Dkt. #13); to Appellant's memorandum of law in opposition to Appellee's motion as "Appellant Opp." (Dkt. #15); and to Appellee's reply memorandum in further support of his motion as "Trustee Reply" (Dkt. #16).

On May 28, 2015, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. (August 2021 Decision 3). On December 4, 2015, the Bankruptcy Court entered an order approving the United States Trustee's appointment of Ian J. Gazes as chapter 11 trustee. (Bankr. Dkt. #71). Following a hearing on June 8, 2016 (the "Confirmation Hearing"), the Bankruptcy Court confirmed the Trustee's Chapter 11 Plan (Bankr. Dkt. #194, Ex. A (the "Chapter 11 Plan")) in an Order dated June 15, 2016 (Bankr. Dkt. #194 (the "Confirmation Order")).

As relevant here, the Chapter 11 Plan provided that the assets of the Debtor's estate (the "Estate") would vest in the reorganized Debtor only after the completion of all distributions and the entry of a final decree. (Chapter 11 Plan § 7.2). Further, the Plan permitted Appellant to retain his sole interest in the Debtor as it existed as of the petition date and to resume management of the reorganized Debtor following the Plan's effective date. (*Id.* at §§ 3.7, 7.10). The Plan became effective on August 3, 2016. (*See* Bankr. Dkt. #221). As of the date of this Opinion and Order, the Trustee has yet to be discharged, no final decree has been entered, and the Debtor's bankruptcy case remains open, "resulting in large part from a quixotic litigation quest perhaps driven by [Appellant's] disappointment … that he has failed to realize anything from the Debtor's estate." (August 2021 Decision 3).[3]

---

[3]     In its August 2021 Decision, the Bankruptcy Court emphasized that Appellant has a long and contentious history with the Bankruptcy Court, citing an order finding Appellant in violation of an automatic stay in the bankruptcy proceedings (Bankr. Dkt. #409); as well as an amended order (i) finding Appellant and his counsel, Brent Chapman, in violation of the Bankruptcy Court's automatic stay order, (ii) further

Two of the Debtor's assets are implicated by the instant appeals: (i) a multi-unit residential brownstone located at 22 Fiske Place, Brooklyn, New York (the "Property") and (ii) a disputed interest in "surplus funds" held by the Kings County Clerk.  The Property was the Debtor's primary asset at the time the Debtor filed for bankruptcy.  (August 2021 Decision 3).  On June 15, 2016, the Bankruptcy Court issued an Order approving the sale of the Property to non-party Irvin Capital, LLC for a purchase price of $3,690,000.00.  (Bankr. Dkt. #193).  That sale closed on August 3, 2016.  (*See* Bankr. Dkt. #232 at 4).

Pursuant to an agreement between the Trustee and the IRS — which agreement was affirmed on the record during the Confirmation Hearing and memorialized in section 7 of the Confirmation Order — the IRS had sixty days from the closing of the Trustee's sale of the Property to obtain an order from the Bankruptcy Court fixing the Estate's liability, if any, for capital gains taxes arising from the sale.  (*See* Confirmation Order; August 2021 Decision 20).  During this period, the Trustee agreed to refrain from distributing any funds remaining in the Estate following the completion of all distributions provided for under the Plan.  (Confirmation Order ¶ 7; August 2021 Decision 20).  The purpose of this hiatus was to ensure that such funds would remain available should the IRS obtain an order within this sixty-day period declaring the Estate liable for payment of taxes arising from the sale of the Property;

---

enjoining Appellant's pursuit of a state court appeal, (iii) directing the immediate withdrawal of Appellant's state court appeal with prejudice, and (iv) imposing sanctions (Bankr. Dkt. #449).

"notwithstanding, such funds at all times remained subject to the Trustee's ongoing costs of the administration of the Estate pursuant to section 503(b) of the Bankruptcy Code." (August 2021 Decision 20).  During the sixty days following the closing of the sale of the Property, the IRS neither sought nor obtained an order setting forth the Estate's payment obligation, nor did it make any timely claim for capital gains taxes against the Estate.  (*Id.* at 21).[4]

In addition to the Property, the Estate held a disputed interest in "surplus funds" held by the Kings County Clerk.  (*See* Chapter 11 Plan § 1.1). The Debtor acquired the Property after a 2008 foreclosure sale, which sale generated approximately $214,979.00 in foreclosure surplus funds (the "Foreclosure Surplus Funds").  (Bankr. Dkt. #387 at 2).  The Supreme Court of the State of New York, County of Kings, appointed a referee to determine the amount due to any claimants to those funds.  (*Id.*).[5]  Following the foreclosure

---

[4]     In response to pleadings filed in the bankruptcy case, on February 1, 2021, Assistant United States Attorney Kirti Reddy filed a letter with the Bankruptcy Court on behalf of the IRS.  (Bankr. Dkt. #490).  The letter stated, in pertinent part:

> I write respectfully on behalf of the IRS in an effort to make clear ... [that] the IRS is not pursuing the collection of any capital gains taxes from the Debtor in this bankruptcy case.  Notably, the Debtor is a single member limited liability company that never elected to be treated as a corporation under the applicable Treasury Regulations and thus, the Debtor is a disregarded entity for Federal income tax purposes. *See* 26 CFR 301.7701-3.  Accordingly, the Government is not seeking to collect any capital gains taxes from the Debtor, but reserves all of its rights to collect the capital gains taxes from the appropriate individual who is liable for the taxes.

(*Id.*).

[5]     In the Supreme Court of the State of New York, County of Kings, during foreclosure proceedings, when a lender determines that a borrower is unable to negotiate a settlement, the lender may request that the court appoint a "referee."  The referee determines the amount of the debt owed and, once a judgment of foreclosure is issued, sells the property at auction.  If the sale generates funds in excess of the amount awarded in the final judgment of foreclosure, referred to as "surplus funds," the referee

sale, the Property's prior owner, Fiske House Apartment Corporation ("Fiske House"), remained in possession of seven of the Property's eight units without paying rent for approximately eight years.  (*Id.*)  In a 2014 state court proceeding, the Debtor sued Fiske House and obtained a default judgment in the amount of $717,271.00.  (*Id.* at 3).  Accordingly, the Debtor claimed an interest in the Foreclosure Surplus Funds.  Appellant, on behalf of the Debtor, retained the law firm of Kera & Graubard ("K&G") to assist the Debtor in filing its claim for the Foreclosure Surplus Funds.  (*See* Bankr. Dkt. #320).  On February 3, 2017, the referee determined that the default judgment constituted a valid lien against the Foreclosure Surplus Funds, and that since those funds were less than the amount of the Debtor's default judgment against Fiske House, the Debtor's Estate should receive the entire amount of the Foreclosure Surplus Funds.  (*See* August 2021 Decision 7; Bankr. Dkt. #398 (the "Referee Report"); Bankr. Dkt. #387 at 1, 3).

On August 30, 2017, K&G moved the Bankruptcy Court for an order imposing an attorney's lien against the Foreclosure Surplus Funds.  (Bankr. Dkt. #320).  After a hearing on K&G's motion held on November 30, 2017, the Bankruptcy Court authorized and directed the Trustee to pay K&G "the sum of $9,620.00 plus expenses in the amount of $996.00 in full and final satisfaction

---

is responsible for depositing those funds with the County Clerk's Office.  The referee is also tasked with determining the amount of surplus funds due to any claimants to those funds.  *See Reporting on Foreclosure of Real Property Funds – Kings County Report 2015-F-18*, N.Y. Office of the State Comptroller (Dec. 31, 2015), https://www.osc.state.ny.us/state-agencies/audits/2015/12/31/reporting-foreclosure-real-property-funds-kings-county-follow (last accessed July 17, 2022).

of any claim and/or attorney's lien K&G may assert against the Debtor's estate." (*See* Bankr. Dkt. #338).  The Trustee subsequently complied with the Court's order and issued a check to K&G in the amount of $10,616.00 from the Trustee's estate account.  (Dinoso Decl., Ex. 21).

Following the state court's ratification of the referee's report awarding the Foreclosure Surplus Funds to the Estate, the Trustee conducted an extensive investigation into the Debtor's claim to the Foreclosure Surplus Funds. Thereafter, on June 13, 2018, the Trustee filed a motion for an order authorizing him to distribute the Foreclosure Surplus Funds being held by the Trustee to Fiske House.  (Bankr. Dkt. #378).  In his motion, the Trustee asserted that the Debtor's claim to such funds had been entirely predicated on a pre-petition fraud orchestrated by Appellant that had resulted in the state court's entry of the default judgment against Fiske House.  (*Id.*).  Accordingly, the Trustee sought authorization from the Bankruptcy Court to turn over the Foreclosure Surplus Funds to Fiske House on equitable grounds.  (*Id.*).  After considering the motion, the Bankruptcy Court ordered the Trustee "to proceed promptly to the State Court and seek [i] reconsideration of the Default Judgment and/or Ratification Order on the basis that the Default Judgment may have been fraudulently obtained and [ii] further direction from the State Court with respect to his conclusion that the Surplus Funds rightfully belong to Fiske House." (Bankr. Dkt. #387 at 4).  What ensued was additional protracted litigation in the state court, in the Bankruptcy Court, and in this Court — all stemming from Appellant's bad-faith efforts to intervene in the

7

state court proceedings after the state court determined he lacked standing to intervene.  (*See* August 2021 Decision at 9).

The state court entered an order on February 20, 2020, vacating the default judgment and directing that the Foreclosure Surplus Funds that had previously been awarded to the Debtor be remitted by the Trustee to the Kings County Clerk's Office within seven days.  (*See* Dinoso Decl., Ex. 17).  The Trustee subsequently remitted the Foreclosure Surplus Funds to the Kings County Clerk's Office.  (Dinoso Decl., Ex. 18).

## B.  The Sanctions Motions, Cross-Motion, and Adversary Proceeding

In a noteworthy display of chutzpah, Appellant's counsel, Brent Chapman, filed a letter request with the Bankruptcy Court on December 3, 2020, seeking leave to file an adversary proceeding for the purpose of securing a declaratory judgment that the Estate would be liable for any capital gains taxes arising from the sale of the Property.  (Bankr. Dkt. #468 (the "December 3 Letter")).  What is more, Appellant sought leave to commence a lawsuit against the Trustee in the United States District Court for the Eastern District of New York based on (i) "the gross negligence and willful wrongdoing of the Trustee," as a result of the Trustee's ostensible failure to pay those taxes; and (ii) the Trustee's allegedly improper remittance of approximately $10,616.00 of the Foreclosure Surplus Funds to K&G.  (*Id.*; *see also* Bankr. Dkt. #494 at 12-13; August 2021 Decision 7, 10).

Three weeks after Mr. Chapman filed his December 3 Letter, on December 28, 2020, the Trustee filed the first of his two motions for sanctions

against Mr. Chapman.  (Bankr. Dkt. #469 (the "First Motion for Sanctions")).
In his motion, the Trustee asked the Bankruptcy Court to disqualify Mr.
Chapman from further appearing on behalf of Appellant in the bankruptcy case
for "repeatedly contribut[ing] to the needless and improper delay in closing this
case."  (*Id.* at 2).  The Trustee alleged that had Mr. Chapman undertaken "even
a modest inquiry" into the relevant facts and legal authority, he could only
have reasonably concluded that the litigation Mr. Chapman sought to initiate
against the Trustee was "neither well-grounded in fact nor warranted under
any applicable law."  (*Id.* at 1-2).

On January 14, 2021, Appellant (through Mr. Chapman) filed a cross-
motion for an order disqualifying Gazes as Trustee for the Debtor.  (Bankr. Dkt.
#478 (the "Cross-Motion")).  In the Cross-Motion, Appellant alleged that the
Trustee had breached his fiduciary duties to the Debtor's Estate by
(i) disbursing more than $10,600 from the Foreclosure Surplus Funds, failing
to reimburse the Estate for such amount, and failing to perform a regular
accounting of the Estate's escrow account; (ii) failing to file and account for an
income tax return to report the capital gains from the August 2016 sale of the
Property and failing to pay all income taxes relating to such capital gains, as
purportedly required by the Internal Revenue Code and by *Holywell Corp.* v.
*Smith*, 503 U.S. 47 (1992); and (iii) "consuming all or a substantial portion of
an escrow in the sum of $400,000" for paying the compensation of the Trustee
and his professionals rather than utilizing such amount for the payment of
taxes.  (Cross-Motion 1).  Appellant also alleged that the Trustee was not

disinterested, had a conflict of interest, and had grossly mismanaged the Estate. (*Id.* at 1-2). The Trustee vehemently disputed these allegations in his opposition submission. (Bankr. Dkt. #481).

Four days after filing the Cross-Motion, on January 18, 2021, Appellant, through Mr. Chapman, initiated an adversary proceeding against the Trustee and Gazes LLC, repeating the allegations in the Cross-Motion and seeking the Bankruptcy Court's leave to commence litigation against the Trustee and his former attorneys in the United States District Court for the Eastern District of New York. (Bankr. Dkt. #479 (the "Adversary Complaint"); *also available at* Adv. Pro., Dkt. #1).[6] The Adversary Complaint pleaded causes of action for gross negligence and breach of fiduciary duty for the Trustee's alleged "willful and deliberate" failure to (i) file income tax returns and pay income taxes ostensibly arising from the sale of the Property; (ii) disburse to the Debtor the so-called "tax escrow" — defined as the Estate funds that had ostensibly been set aside to pay income taxes, but were instead used by the Trustee to pay post-confirmation professional fees; and (iii) account for the alleged "deficiency" in Estate funds created by the Trustee's payment of the K&G fees. (*See id.*; August 2021 Decision 20). The Adversary Complaint sought compensatory and punitive damages, as well as a judgment surcharging the Trustee and compelling the disgorgement of all compensation he received during the period

---

[6]     Appellant's adversary proceeding was assigned the docket number Adv. Pro. 21-1002 (SCC). The Court refers to docket entries in this adversary proceeding as "Adv. Pro., Dkt. #[ ]."

of alleged misconduct, in an amount exceeding $500,000.00.  (*See* Adversary
Complaint ¶ 93).  The Trustee and Gazes LLC each moved to dismiss the
Adversary Complaint on numerous procedural and substantive grounds,
describing it as "predictably unintelligible," offering "nothing more than
conclusory and defamatory allegations unsupported by well-pleaded facts or
any relevant legal authority," and "riddled with seemingly innumerable fatal
procedural and substantive defects[,] each of which demands the immediate
dismissal of the Complaint with prejudice."  (Adv. Pro., Dkt. #3 at 2 (Trustee);
*see also* Adv. Pro., Dkt. #17 (Gazes LLC)).[7]

On February 23, 2021, the Trustee filed a second motion for sanctions.
(Bankr. Dkt. #494 (the "Second Motion for Sanctions," and together with the
First Motion for Sanctions, the "Motions for Sanctions")).  In the Second Motion
for Sanctions, the Trustee listed the allegedly frivolous and sanctionable filings
made by Mr. Chapman, including: (i) the December 3 Letter; (ii) the Cross-
Motion; (iii) the Adversary Complaint; (iv) Appellant's opposition to the First
Motion for Sanctions (Bankr. Dkt. #485); and (v) Appellant's Reply to the
Trustee's Objection to the Cross-Motion (Bankr. Dkt. #489) (together, the
"Sanctionable Filings").  The Trustee asserted that, after Mr. Chapman's filing
of the December 3 Letter and his prompt receipt of the First Motion for
Sanctions, Mr. Chapman had "repurposed and amplified the same triad of

---

[7]     Gazes LLC's motion to dismiss incorporated by reference the entirety of the Trustee's
motion to dismiss.  (*See* Adv. Pro., Dkt. #17 at 2).

meritless and nonsensical claims set forth in [his December 3 Letter] in a new series of frivolous and sanctionable filings." (Second Motion for Sanctions ¶ 1).

*First*, the Trustee alleged that Mr. Chapman was "flagrantly misrepresent[ing] the Supreme Court's decision in *Holywell Corp* v. *Smith*" as requiring the Trustee to pay capital gains taxes attributable to Appellant when, in reality, any capital gains realized from the sale of Estate property were attributable to Appellant personally, a fact that Appellant himself acknowledged and disclosed in multiple filings with the Court prior to the Trustee's appointment. (Second Motion for Sanctions ¶ 2). *Second*, the Trustee alleged that the Sanctionable Filings "deliberately misstate[d] the Trustee's obligations to the IRS" under the Chapter 11 Plan, such as the baseless allegation that the Trustee was required to establish a formal tax escrow, and, further, that the Filings "intentionally disregard[ed] the limited time frame of those obligations, and willfully ignore[d] the Trustee's full performance of those obligations." (*Id.* at ¶ 3). *Third* and finally, the Trustee reminded the court that he had remitted the Foreclosure Surplus Funds to K&G as required by multiple court orders, thereby seeking to refute Mr. Chapman's "reckless claim" that the Trustee had breached his fiduciary duties in his handling of those funds. (*Id.* at ¶ 4).

Separately, on January 6, 2021, David Dinoso, counsel for the Trustee, filed an interim fee application for the period of September 15, 2020, through February 16, 2021, pursuant to which he sought allowance of fees totaling $31,350.00 and expenses totaling $26.65. (Bankr. Dkt. #475, *as amended by*

12

Bankr. Dkt. #491 (the "Fee Application")).  On January 21, 2021, Appellant, through Mr. Chapman, opposed the Fee Application "[i]n view of the pending issues against Dinoso and Gazes as set forth in the adversary proceeding and the motion for disqualification of Trustee Gazes."  (Bankr. Dkt. #486 at 7). Dinoso filed a reply on February 26, 2021 (Bankr. Dkt. #500).

On August 11, 2021, the Bankruptcy Court issued a Memorandum Decision "dispos[ing] of all pending matters in this case and adversary proceeding" — namely, (i) granting the Trustee's Motions for Sanctions (August 2021 Decision 26-27), (ii) denying Appellant's Cross-Motion (*id.* at 23); (iii) granting dismissal of the Adversary Complaint (*id.* at 24-26 (the "Dismissal Order")); and (iv) approving the Fee Application (*id.* at 27).  The Bankruptcy Court directed counsel for the Trustee "to submit orders consistent with the foregoing."  (*Id.* at 28).  The following day, the Bankruptcy Court issued an Order formally imposing sanctions against Mr. Chapman and denying Appellant's Cross-Motion.  (Bankr. Dkt. #511 (the "Sanctions Order")).[8]  That same day, the Bankruptcy Court issued an Order formally granting Mr. Dinoso's application for interim professional compensation.  (Bankr. Dkt. #512 (the "Interim Fee Order")).

---

[8]    The Bankruptcy Court noted that this would be an appropriate case for the imposition of "substantial monetary sanctions," observing that "Mr. Chapman has consumed dozens of hours of court resources and has obstructed the Trustee's ability to timely administer and close the Debtor's case.  Enough is enough."  However, since the Trustee requested only disqualification as the sanction, the Court elected not to discuss or impose monetary sanctions.  (August 2021 Decision 26).

On September 14, 2021, the Bankruptcy Court granted Appellant an extension of time to file a notice of appeal.  (Bankr. Dkt. #516).  Appellant filed his notice of appeal in the United States Bankruptcy Court for the Southern District of New York on September 17, 2021 (Bankr. Dkt. #519, 520), and the appeal was docketed in this Court on September 29, 2021 (Dkt. #1).  The Sanctions Order is the subject of Case No. 21 Civ. 8087 (KPF); the Interim Fee Order is the subject of Case No. 21 Civ. 8090 (KPF); and the Dismissal Order is the subject of Case No. 21 Civ. 8093 (KPF).

## C.    The Instant Motion to Dismiss

On November 9, 2021, the Trustee filed a letter motion for a conference to discuss his anticipated motion to dismiss these appeals.  (Dkt. #6).  Appellant responded to this letter on November 11, 2021.  (Dkt. #8).  On November 26, 2021, Appellant filed his appellate brief.  (Dkt. #11).  On December 10, 2021, the Court held a telephone conference in which it set a briefing schedule for the Trustee's motion to dismiss and stayed the Trustee's deadline to file his brief on the merits of the appeal pending adjudication of the motion to dismiss.  (*See* Minute Entry for Dec. 10, 2021).

On December 17, 2021, the Trustee filed his motion to dismiss the bankruptcy appeals.  (Dkt. #12-14).  Appellant filed his opposition on December 31, 2021.  (Dkt. #15).  The Trustee filed his reply on January 21, 2022.  (Dkt. #16).  Accordingly, the Trustee's motion to dismiss is fully briefed and ripe for the Court's consideration.

14

**DISCUSSION**

**A.    The Standard of Review**

A federal district court has appellate jurisdiction to hear appeals from

final bankruptcy court orders.  28 U.S.C. § 158(a)(1).[9]  The Court reviews the

Bankruptcy Court's findings of fact for clear error and conclusions of law *de*

*novo.  In re 22 Fiske Place*, No. 20 Civ. 1250 (MKV), 2021 WL 918763, at *3

(S.D.N.Y. Mar. 9, 2021), *aff'd sub nom. In re 22 Fiske Place, LLC*, No. 21-810-

---

[9]    As Trustee notes in his brief, the Interim Fee Order is an interlocutory order.  (Trustee Br. 2 n.2).  As explained below, the Court, in its discretion, declines to exercise appellate jurisdiction over this interlocutory order.

Under 28 U.S.C. § 158(a)(3), a district court "has discretionary appellate jurisdiction over an interlocutory order of a bankruptcy court."  *In re Liddle & Robinson, L.L.P,* No. 20 Civ. 865 (ER), 2020 WL 4194542, at *4 (S.D.N.Y. July 21, 2020) (quoting *In re Kassover*, 343 F.3d 91, 94 (2d Cir. 2003)).  While neither Section 158 nor the Bankruptcy Rules "provides guidelines for determining whether a district court should grant leave to appeal, ... most district courts in the Second Circuit have applied the analogous standard for certifying an interlocutory appeal from a district court order, set forth in 28 U.S.C. § 1292(b)."  *Id.* (quoting *In re Cutter*, No. 05 Civ. 5527 (FB), 2006 WL 2482674, at *4 (E.D.N.Y. Aug. 29, 2006) (internal citations omitted)).

In order to certify an interlocutory appeal under section 1292(b), the order being appealed must involve "[i] a controlling question of law [ii] as to which there is substantial ground for difference of opinion and [iii] that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]"  28 U.S.C. § 1292(b).  "This standard is strictly applied as interlocutory appeals from bankruptcy courts' decisions are 'disfavored' in the Second Circuit."  *In re Liddle & Robinson, L.L.P,* 2020 WL 4194542, at *4 (quoting *In re Madoff*, No. 08 Civ. 01289 (SAS), 2010 WL 3260074, at *3 (S.D.N.Y. Aug. 6, 2010) (internal citations omitted)).  "The party seeking an interlocutory appeal has the burden of showing exceptional circumstances to overcome the general aversion to piecemeal litigation[.]"  *In re Perry H. Koplik & Sons, Inc.*, 377 B.R. 69, 73 (S.D.N.Y. 2007) (citations omitted).  Further, in order to appeal from an interlocutory order of a bankruptcy court under 28 U.S.C. § 158(a)(3), a party must first file with the bankruptcy clerk a motion for leave to appeal as prescribed by Federal Rule of Bankruptcy Procedure 8003(a).  Fed. R. Bankr. P. 8004(a).

Appellant's efforts to appeal from the Interim Fee Order are deficient on several fronts.  As an initial matter, he has failed to file the requisite motion for leave as prescribed by Rules 8004(a) and 8003(a).  Even if the Court were to construe Appellant's appeal of the Interim Fee Order as a request for leave to appeal under Rule 8004(a), Appellant has made no effort to demonstrate "exceptional circumstances" justifying a departure from the basic policy of withholding appellate review until after the entry of a final judgment.  Moreover, Appellant lacks standing to challenge the Interim Fee Order, as discussed *infra.*

bk, 2022 WL 519188 (2d Cir. Feb. 22, 2022) (summary order).  This Court may affirm "on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decisions below."  *Id.* (quoting *Ad Hoc Comm. of Personal Injury Asbestos Claimants* v. *Dana Corp. (In re Dana Corp.)*, 412 B.R. 53, 56 (S.D.N.Y. 2008)).

"A factual finding is not clearly erroneous unless the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *In re Pirogova*, 612 B.R. 475, 481 (S.D.N.Y. 2020) (quoting *In re CBI Holding Co.*, 529 F.3d 432, 449 (2d Cir. 2008) (internal quotation marks omitted)).  "[I]f the bankruptcy court's account of the evidence is plausible in light of the record viewed in its entirety," a reviewing court "may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."  *Id.* (quoting *In re Motors Liquidation Co.*, 829 F.3d 135, 158 (2d Cir. 2016) (internal quotation marks omitted)).  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  *Id.* (quoting *UFCW Local One Pension Fund* v. *Enivel Props., LLC*, 791 F.3d 369, 372 (2d Cir. 2015) (internal quotation marks omitted)).

## B.   Appellant Lacks Standing to Appeal the Sanctions Order and Interim Fee Order

### 1.   Applicable Law

In all matters, the Court's authority to exercise jurisdiction is constitutionally limited to actual cases and controversies.  *See* U.S. Const.,

16

art. III, § 2, cl. 1.; *In re 22 Fiske Place*, 2021 WL 918763, at *3 (citing *Church of Scientology of Cal.* v. *United States*, 506 U.S. 9, 12 (1992) ("It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'")).  This jurisdictional limitation requires, among other things, that a party have standing to pursue his claims.  *See Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 338, (2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy … to ensure that federal courts do not exceed their authority as it has been traditionally understood.").

To establish standing, a party must demonstrate that he has (i) suffered an injury in fact, (ii) that is fairly traceable to the challenged conduct of the defendant, and (iii) that is likely to be redressed by a favorable judicial decision.  *Spokeo*, 578 U.S. at 338 (citing *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  Critically, in addition to satisfying Article III standing, "an appellant must also establish prudential standing, meaning that the appellant must 'assert his own legal rights and not those of third parties.'"  *In re Lehman Bros. Holdings*, 2020 WL 1503473, at *1 (quoting *In re Old HB, Inc.*, 525 B.R. 218, 222 (S.D.N.Y. 2015) (internal citations omitted)).  The Second Circuit has adopted the general rule "that in order to have standing to appeal from a bankruptcy court ruling, an appellant must be 'a person aggrieved' — a person 'directly and adversely affected pecuniarily' by the challenged order of the bankruptcy court."  *In re Kaspar Town of Putnam Valley* v. *Kaspar*, No. 20 Civ.

17

393 (KMK), 2021 WL 1226586, at *9 (S.D.N.Y. Mar. 31, 2021) (quoting *In re DBSD N. Am., Inc.*, 634 F.3d 79, 88-89 (2d Cir. 2011)).  In other words, an appellant "must show not only 'injury in fact' under Article III[,] but also that the injury is 'direct[ ]' and 'financial.'"  *Id.* (quoting *In re DBSD N. Am.*, 634 F.3d at 89).  "This test is stricter than Article III's injury in fact test."  *In re Lehman Bros. Holdings, Inc.*, No. 19 Civ. 6397 (PAE), 2020 WL 1503473, at *1 (S.D.N.Y. Mar. 30, 2020) (quoting *In re Barnet*, 737 F.3d 238, 242 (2d Cir. 2013)).  In practical terms, it means that an "[a]ppellant cannot proceed with [an] appeal if [he] cannot demonstrate that [he] suffered a direct financial injury as a result of the Order."  *In re Assante*, No. 12 Civ. 5309 (CS), 2013 WL 787968, at *2 (S.D.N.Y. Mar. 4, 2013).

### 2.    Analysis

That Appellant is subject to the Bankruptcy Court's August 2021 Decision does not, without more, make him an "aggrieved person."  *See In re Ocean Rig UDW Inc.*, 764 F. App'x 46, 48 (2d Cir. 2019) (summary order) ("That [appellant] is subject to these injunctions does not, without more, make her an 'aggrieved person.'"); *Kane* v. *Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 642 (2d Cir. 1988) ("[I]f appellate standing is not limited, bankruptcy litigation will become mired in endless appeals brought by the myriad of parties who are indirectly affected by every bankruptcy court order."). Instead, Appellant must demonstrate that his pecuniary interests were "directly and adversely affected" by the August 2021 Decision.  *In re Ocean Rig UDW Inc.*, 764 F. App'x at 48.

In his muddled opposition brief, Appellant argues that he has standing to appeal the Bankruptcy Court's rulings.  The Court understands Appellant's standing arguments to be that (i) as an interest holder of the Debtor, he has statutory standing as a party in interest to challenge each of the Bankruptcy Court Orders under 11 U.S.C. § 1109(b); (ii) the disqualification of Appellant's attorney, Mr. Chapman, in the Bankruptcy Court effectively denied Appellant an opportunity to stay enforcement of the Bankruptcy Court Orders for the purpose of seeking, in an appellate court, injunctive relief for an accounting from the Estate to address his personal tax obligation; and (iii) Appellant qualifies as an aggrieved person because he faces individual income tax liability for every transaction of the Debtor.  (Appellant Opp. 1-5, 17-18).  The Court addresses each of Appellant's arguments in turn.

*First*, Appellant argues that as an interest holder of the Debtor, he has statutory standing as a party in interest to challenge each of the Bankruptcy Court Orders under 11 U.S.C. § 1109(b).  (Appellant Opp. 1).  Bankruptcy Code section 1109(b) provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."  11 U.S.C. § 1109(b).  However, section 1109(b) does not automatically grant statutory standing to the parties listed therein; a party must still demonstrate a pecuniary interest in the order being challenged in order to have standing. *See In re Residential Cap., LLC*, No. 14 Civ. 761 (ER), 2015 WL 629416, at *3

(S.D.N.Y. Feb. 13, 2015) ("To have standing in bankruptcy court, a party must meet three requirements: [i] Article III's constitutional requirements; [ii] federal court prudential standing requirements; *and* [iii] the 'party in interest' requirements under Section 1109(b) of the Bankruptcy Code." (emphasis added)); *In re Innkeepers USA Tr.*, 448 B.R. 131, 141 (Bankr. S.D.N.Y. 2011) (observing that courts in this District have limited "party in interest" standing to parties with a direct interest in the bankruptcy proceeding); *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 74 (Bankr. S.D.N.Y. 2009) ("It is generally understood that 'a pecuniary interest ... directly affected by the bankruptcy proceeding' provides standing under § 1109(b)." (internal citations omitted)).

Appellant's failure to identify any way in which *his* pecuniary interests — as distinct from those of the Debtor's — have been directly and adversely affected by the challenged orders is fatal to his standing to appeal the Bankruptcy Court Orders.  Critically, the Chapter 11 Plan expressly provides that Appellant will retain his sole membership interest in the reorganized Debtor and, additionally, that he will not receive a distribution of the Estate assets, if any, upon the closing of the bankruptcy case.  (*See* Chapter 11 Plan §§ 3.7, 7.10).  The upshot of these Plan provisions is that regardless of the outcome of the challenged Bankruptcy Court Orders, Appellant's membership interest in the reorganized Debtor remains unimpaired.

Appellant argues that as the "sole equity security holder in the Debtor," the Bankruptcy Court's decision has a direct and adverse effect on his pecuniary interests.  (Appellant Opp. 18).  This argument misapprehends the

law.  While the challenged orders may impact the assets of the bankruptcy

Estate, New York law makes plain that Appellant's status as the Debtor's sole

member does not confer upon him a legally cognizable interest in the Debtor's

property.  *See* N.Y. Ltd. Liab. Co. Law § 601 ("A member has no interest in

specific property of the limited liability company.").  It follows logically that

Appellant cannot claim standing to appeal Bankruptcy Court orders that affect

property to which he has no legally cognizable interest.  *See In re 11 East 36th,*

*LLC*, No. 13-11506 (REG), 2015 WL 397799, at *2 (Bankr. S.D.N.Y. Jan. 29,

2015) (concluding that the transfer of an interest in a limited liability company

does not transfer any interest in the real property owned by the LLC), *aff'd sub*

*nom. In re: 11 E. 36th LLC*, No. 13-11506 (REG), 2016 WL 1117588 (S.D.N.Y.

Mar. 21, 2016), *aff'd sub nom. In re 11 E. 36th, LLC*, 665 F. App'x 121 (2d Cir.

2016) (summary order); *see also Sealy* v. *Clifton, LLC*, 890 N.Y.S.2d 598, 600

(2d Dep't 2009) ("Since the properties in question are owned by [the LLC], the

plaintiff [as 50% owner of the LLC] cannot maintain a cause of action

[regarding property owned by the LLC] in his individual capacity[.]"); *Brach* v.

*Levine*, 36 Misc. 3d 1213(A), 957 N.Y.S.2d 263, 2012 WL 2899021, at *6 (Sup.

Ct. 2012) (observing that an individual has neither capacity nor standing to

sue for the harm to any limited liability companies of which he is a member).

Two of the challenged orders touch exclusively upon the Debtor's

property interests, not Appellant's.  By way of illustration, the Interim Fee

Order implicates the Estate's assets, and does not draw any money from

Appellant's coffers.  Further, the Cross-Motion relied on allegations that the

Trustee's malfeasance and mismanagement resulted in a significant diminution of Estate funds — allegations which, again, implicate the pecuniary interests of the *Estate*, not of Appellant personally. As the Trustee observes in his brief, "[w]hether the estate is hopelessly underwater or flush with cash is, as a matter of law, of no concern to [Appellant] since he has received all that he is entitled to from the estate and under the Plan." (Trustee Br. 14). Neither the Interim Fee Order nor the Sanctions Order alters this state of affairs.

*Second*, Appellant argues that he was aggrieved by the Sanctions Order because the disqualification of Mr. Chapman in the Bankruptcy Court effectively denied Appellant an opportunity to stay enforcement of the Bankruptcy Court Orders for the purpose of seeking, in an appellate court, injunctive relief for an accounting from the Estate to address his personal tax obligation. (Appellant Opp. 5). As a preliminary matter, the Court observes that the sanction at issue — disqualification — is, at most, tangentially related to Appellant's pecuniary interests, inasmuch as it is nonmonetary in nature and was directed at Mr. Chapman's behavior, not Appellant's. More importantly, however, Appellant forfeited his right to appeal the sanction imposed on Mr. Chapman by failing to raise that challenge before the Bankruptcy Court.[10] Even on appeal, Appellant has offered no reason for his

---

[10]    Although the parties used the term "waive[r]" to describe Appellant's failure to raise an argument before the Bankruptcy Court, "[w]here a litigant's action or inaction is deemed to incur the consequence of loss of a right, or … a defense, the term 'forfeiture' is more appropriate." *See In re 22 Fiske Place, LLC*, No. 21-810-bk, 2022 WL 519188, at *2 n.2 (2d Cir. Feb. 22, 2022) (summary order) (quoting *Doe* v. *Trump Corp.*, 6 F.4th 400, 409 n.6 (2d Cir. 2021) (quotation marks omitted)).

failure to raise this challenge in the Bankruptcy Court.  It is well-established "that an appellate court will not consider an issue raised for the first time on appeal." *In re 22 Fiske Place*, 2021 WL 918763, at *4 (quoting *Allianz Ins. Co.* v. *Lerner*, 416 F.3d 109, 114 (2d Cir. 2005)); *see also Gordon* v. *Tese-Milner (In re Gordon)*, 577 B.R. 38, 46 (S.D.N.Y. 2017) ("[A]ny arguments not raised in the bankruptcy court are considered waived[.]").  Courts will not ignore this rule where, as here, there is no reason the litigant could not have raised the argument below.  *In re 22 Fiske Place*, 2021 WL 918763, at *4.[11]  Applying those principles here, the Court concludes that Appellant forfeited any ability he had to challenge the sanction imposed on Mr. Chapman in the Bankruptcy Court.

*Third* and finally, Appellant argues that he qualifies as an aggrieved person because he faces individual income tax liability for every transaction of the Debtor, including the sale of the Property.  (Appellant Opp. 1).  Significantly, however, the Debtor is a single-member limited liability company that did not elect to be treated as a corporation under applicable U.S. Treasury Regulations.  (*See* Bankr. Dkt. #46, 52).  Stated differently, the Debtor is a disregarded entity for tax purposes; as such, it is true that any capital gains arising from the 2016 sale of the Debtor's real property are attributable to

---

[11]    While Appellant notes in his brief that following Mr. Chapman's disqualification, it was not financially feasible for him to engage substitute counsel in view of the time it would take to review the record, he explicitly states that his purpose for doing so would have been "for the purpose of bringing an application for stay relief in the Bankruptcy Court." (Appellant Opp. 17 n.31).  Notably, Appellant makes no indication that, had it been feasible, he would have engaged substitute counsel for the purpose of challenging the Sanctions Order.  (*See id.*).

Appellant as the Debtor's sole member.  (August 2021 Decision 16).[12]  That
said, neither the Interim Fee Order nor the Sanctions Order implicates
Appellant's potential tax liability.  *See In re DBSD N. Am., Inc.*, 634 F.3d at 89
("[I]n order to have standing to appeal from a bankruptcy court ruling, an
appellant must be 'a person aggrieved' … *by the challenged order of the
bankruptcy court.*" (emphasis added)).  As Appellant has not demonstrated any
pecuniary interest in the Estate, he lacks standing to challenge the Sanctions
Order, including the denial of his Cross-Motion to disqualify the Trustee; and
the Interim Fee Order.

The same cannot be said of the Dismissal Order.  The Adversary
Complaint listed "numerous acts of wrongdoing," including "the Trustee's
failure to file income tax returns, the Trustee's false claims of derived judicial
immunity and the Appellee's failure to establish an attorney escrow account for
the payment of income taxes[.]"  The theory underlying the Adversary
Complaint was that those wrongs directly impacted Appellant's personal tax
burden: as just noted, the Debtor is a disregarded entity for tax purposes,
which means Appellant is personally liable for any tax liability arising from the

---

[12]    Depending on elections made by the LLC and the number of members, the IRS will treat
        an LLC either as a corporation, partnership, or as part of the owner's tax return (a
        "disregarded entity").  For income tax purposes, an LLC with only one member is treated
        as an entity disregarded as separate from its owner, unless it files a Form 8832 and
        affirmatively elects to be treated as a corporation.  If a single-member LLC does not elect
        to be treated as a corporation, the LLC's activities should be reflected on its owner's
        federal tax return.  *See Single Member Limited Liability Companies*, IRS (Sept. 1, 2021),
        https://www.irs.gov/businesses/small-businesses-self-employed/single-member-
        limited-liability-companies (last accessed July 17, 2022).

Debtor's activities.  As this directly implicates Appellant's pecuniary interests, Appellant has standing to challenge the dismissal of the Adversary Complaint.

## C.     The Court Affirms the Bankruptcy Court's Dismissal Order

The Bankruptcy Court observed in its August 2021 Decision that the Adversary Complaint "was premised on the same unreasonable, unfounded allegations upon which the other Sanctionable Pleadings rel[ied]." (August 2021 Decision 24).  To review, the Adversary Complaint sought leave of the Bankruptcy Court to commence litigation against the Trustee to pursue causes of action arising in gross negligence and breach of fiduciary duty for the Trustee's alleged "willful and deliberate" failures to (i) file income tax returns and pay income taxes ostensibly arising from the sale of the Property; (ii) disburse to the Debtor the so-called "tax escrow," which was instead used by the Trustee to pay post-confirmation professional fees; and (iii) account for the alleged "deficiency" in Estate funds created by the Trustee's payment of the K&G fees.  (*See generally* Adversary Complaint).

The Dismissal Order listed several potential independent grounds for dismissal, including (i) insufficient service of process; (ii) lack of subject matter jurisdiction due to Appellant's lack of prudential and constitutional standing to seek the relief requested in the Adversary Complaint; (iii) failure to state claims upon which relief can be granted; and (iv) lack of federal subject matter jurisdiction over the proposed causes of action because of the failure to allege diversity.  (August 2021 Decision 24).  Ultimately, the Bankruptcy Court determined not to reach all of these grounds, because it concluded that the

25

Adversary Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief could be granted. (*Id.*). This Court concludes similarly that while the record potentially supports arguments for each of the bases identified by Judge Chapman, the clearest basis for dismissal in the record is on the merits.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable here through Federal Rule of Bankruptcy Procedure 7012, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Bankr. P. 7012(b) (providing that Rule 12(b)-(i) applies in adversary proceedings). While the plausibility requirement "is not akin to a 'probability requirement,' ... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. To that end, a plaintiff must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Bankruptcy Court found that the assertions upon which Appellant relied in the Adversary Complaint were conclusory, unsupported, and not entitled to the assumption of truth. (August 2021 Decision 25). Further, the Bankruptcy Court found that even if it were to accept as true all of the factual

allegations in the Adversary Complaint, the Complaint still failed to articulate a *prima facie* case for the causes of action set forth therein — gross negligence and breach of fiduciary duty — as it did not state with particularity the factual allegations that plausibly supported the elements of these claims.  (*Id.*).  Finally, the Bankruptcy Court found that the Adversary Complaint did not allege facts plausibly demonstrating that Gazes LLC should be treated as an alter ego of the Trustee.  (*Id.*).  The Court affirms the Bankruptcy Court's dismissal of the Adversary Complaint for failure to state claims for gross negligence and breach of fiduciary duty.

### 1.    The Adversary Complaint Fails to State a Claim for Gross Negligence

Under New York law, a *prima facie* case of gross negligence requires the plaintiff to show "[i] a duty to the plaintiff; [ii] a breach of duty; [iii] a reasonably close causal connection between the contact and the resulting injury; and [iv] actual loss, harm or damage."  *Brantley* v. *Mun. Credit Union*, No. 19 Civ. 10994 (KPF), 2021 WL 981334, at *15 (S.D.N.Y. Mar. 16, 2021) (quoting *Cromer Fin. Ltd.* v. *Berger*, 137 F. Supp. 2d 452, 495 (S.D.N.Y. 2001) (internal quotation marks and citations omitted)).  To constitute gross negligence, "the act or omission must be of an aggravated character, as distinguished from the failure to exercise ordinary care," as gross negligence "evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing."  *Id.* (internal quotation marks and citations omitted).

In Count One of the Adversary Complaint, Appellant alleged that, following the sale of the Property, the Trustee was required by law "to make and file an income tax return to report the gain derived from the sale of the Property" and "to pay the tax relating to the gain derived from the sale of the Property, at the time of filing the tax return." (Adversary Compl. ¶¶ 48-49). Further, Appellant alleged that "the Trustee and Gazes LLC have acted as an alter ego of each other," such that the Trustee's alleged acts of malfeasance could be attributed to Gazes LLC. (*Id.* at ¶ 50).

Put simply, the Adversary Complaint fails to establish that the Trustee owed any duty of care to Appellant with respect to capital gains arising from the sale of the Property. "A trustee has the statutory duty to protect and preserve property of the *estate* for the purpose of maximizing a distribution to creditors." *In re Ngan Gung Rest.*, 254 B.R. 566, 570 (Bankr. S.D.N.Y. 2000) (citing 11 U.S.C. § 1106(a)) (emphasis added). "A trustee also owes a fiduciary duty to each creditor of the estate." *Id.* (citing *Commodity Futures Trading Comm'n* v. *Weintraub*, 471 U.S. 343, 355 (1985)). "In the performance of those duties, a trustee is obligated to pay taxes incurred during the administration of the case." *Id.* (citing 28 U.S.C. §§ 959(b) and 960). However, a trustee is *not* obligated to file tax returns in all chapter 11 cases regardless of a debtor's tax entity status; instead, a trustee's obligation to file returns arises only when "required by law." *See* 11 U.S.C. § 1106(a)(6).

Here, the Trustee was not "required by law" to file returns on behalf of the post-petition Debtor. As stated above, the Debtor is a single member

limited liability company that did not affirmatively elect to be treated as a corporation for federal income tax purposes, and therefore the Debtor has no liability for any capital gains.  Instead, Appellant is personally liable for any capital gains resulting from the sale of the Property.  That Debtor filed a petition for bankruptcy is of no consequence to its tax status.  *See Gilliam* v. *Speier (In re KRSM Props., LLC)*, 318 B.R. 712, 719-20 (B.A.P. 9th Cir. 2004) ("[T]he filing of a bankruptcy case does not operate, without more, to effect a change in the status of income tax elections regarding an LLC.").  This is true despite Appellant's demonstrably false allegation that the Debtor was treated as a corporation for purposes of the bankruptcy proceedings.  (Adversary Compl. ¶ 42).

In the Adversary Complaint, Appellant cited a number of federal statutes and regulations in support of his claim that the Trustee was required to file an income tax return following the sale of the Property.  (Adversary Complaint ¶ 48).  However, not one of Appellant's citations is relevant to the instant matter.  For example, the Adversary Complaint cited to section 1398 of the Internal Revenue Code (the "IRC"), which concerns bankruptcy cases involving natural persons, not business entities such as the Debtor.  *See* 26 U.S.C. § 1398(a) ("Except as provided in subsection (b), this section shall apply to any case … in which the debtor is an individual.").  Similarly off-base is Appellant's reliance on IRC section 6012(b)(3) and Treasury Regulation § 1.6012-3(b)(4).

(Adversary Compl. ¶¶ 38, 39).[13]  Both provisions are solely applicable to corporations, and the Debtor is not a corporation under the Treasury Regulations.  *See* 26 U.S.C. § 6012(b)(3) (stating that where a trustee holds title to the property of a corporation, such trustee "shall make the return of income for such corporation in the same manner and form as corporations are required to make such returns"); 26 C.F.R. § 1.6012-3 (same); 26 C.F.R. § 301.7701-2(b) (identifying those business entities which are considered corporations for federal tax purposes).  Appellant also cited to IRC section 6012(b)(4), which states that "[r]eturns of an estate ... shall be made by the fiduciary thereof."  26 U.S.C. § 6012(b)(4).  Significantly, however, this subsection does not create an obligation to file a return where no such obligation otherwise existed.  (Adversary Compl. ¶ 38).  And while Appellant represented that the Bankruptcy Code required the Trustee to file a return, the law is clear that a trustee's obligation to file a return arises only when otherwise "required by law[.]"  *See* 11 U.S.C. § 1106(a)(6).

Further, Appellant alleged that the Trustee had an obligation to use Estate funds to satisfy any tax liability arising from the sale of the Property.  In support, Appellant cited to 26 U.S.C. § 6151 and *Holywell Corp.* v. *Smith*, 503 U.S. 47 (1992).  (Adversary Compl. ¶ 49).  Here, too, the proffered citations are inapposite.  *First*, Section 6151 applies "when a return of tax is required under this title or regulations," which is not the case here.  26 U.S.C. § 6151(a).

---

[13]     The Adversary Complaint contains two paragraphs labeled "38."  This citation refers to the second of those two paragraphs.

*Second*, *Holywell* involved the liquidation of trusts created pursuant to a confirmed chapter 11 plan for corporate debtors and an individual debtor; after the liquidating trustee sold trust property, neither the liquidating trustee nor the debtors filed tax returns. *Holywell* does not address the issue of whether a chapter 11 trustee is responsible for filing a debtor's tax returns or paying capital gains taxes when the debtor is a disregarded entity, as is the case here.

Finally, as to Appellant's allegations that Gazes LLC acted as an alter ego of the Trustee, the Court affirms the Bankruptcy Court's finding that Appellant failed to allege facts supporting an alter ego theory of liability. "Such liability only exists where 'the corporation has been so dominated by an individual or another corporation (usually a parent corporation), and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own.'" *Soter Techs., LLC* v. *IP Video Corp.*, 523 F. Supp. 3d 389, 411 (S.D.N.Y. 2021) (quoting *Liberty Synergistics, Inc.* v. *Microflo Ltd.*, 50 F. Supp. 3d 267, 296 (E.D.N.Y. 2014)). Under New York law, to determine whether the first requirement, domination, has been met, the following equitable factors are considered:

> [i] the absence of formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, [ii] inadequate capitalization, [iii] whether funds are put in and taken out of the corporation for personal rather than corporate purposes, [iv] overlap in ownership, officers, directors, and personnel, [v] common office space, address and telephone numbers of corporate entities, [vi] the amount of business discretion displayed by the allegedly dominated corporation, [vii] whether the related

31

> corporations deal with the dominated corporation at arm['s] length, [viii] whether the corporations are treated as independent profit centers, [ix] the payment or guarantee of debts of the dominated corporation by other corporations in the group, and [x] whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Id* at 412. (quoting *Liberty Synergistics*, 50 F. Supp. 3d at 296-97).

The Adversary Complaint did not plead domination sufficient to establish alter ego liability. Indeed, the entirety of Appellant's theory of alter ego liability can be found in two paragraphs of the Adversary Complaint: paragraph 51, which reads, "At all pertinent times herein, the Trustee and Gazes LLC were controlled by Ian J. Gazes[;]" and paragraph 52, which reads, "At all pertinent times herein, the Trustee and Gazes LLC were one and the same." (Adversary Compl. ¶¶ 51-52). These conclusory allegations lack any of the detail necessary for a court to determine that Gazes LLC acted as an alter ego of the Trustee.

Because Appellant failed to offer any non-conclusory allegations that Trustee owed him any duty of care with respect to taxes attributable to the sale of the Property, this Court agrees with the Bankruptcy Court that Appellant failed to establish a *prima facie* case of gross negligence. Further, because Appellant failed to offer any non-conclusory allegations that Gazes LLC is an alter ego of the Trustee, the Court affirms the Bankruptcy Court's finding that Appellant failed to state an alter ego theory of liability against Gazes LLC.

2.     **The Adversary Complaint Fails to State a Claim for Breach of Fiduciary Duty**

Similarly, the Court affirms the Bankruptcy Court's finding that the Adversary Complaint failed to state a claim for breach of fiduciary duty.  In his Adversary Complaint, Appellant alleged that "[a]t all pertinent times herein, the Trustee was under a fiduciary obligation to the Debtor and [Appellant] as the sole security holder in the Debtor[.]"  (Adversary Compl. ¶ 62).  Appellant further alleged that the Trustee breached this fiduciary duty by failing to file income tax returns and to pay income taxes ostensibly arising from the sale of the Property (Adversary Compl. ¶¶ 61-71 ("Count Two")); failing to maintain an escrow for the payment of income taxes (*id.* at ¶¶ 72-86 ("Count Three")); failing to disburse the escrow to the Debtor (*id.* at ¶¶ 87-94 ("Count Four")); and failing to hold the Foreclosure Surplus Funds in escrow (*id.* at ¶¶ 95-110 ("Count Five")).

To state a claim for breach of fiduciary duty under New York law, a plaintiff "must allege [i] that a fiduciary duty existed between plaintiff and defendant, [ii] that defendant breached that duty, and [iii] damages as a result of the breach." *United States* v. *Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 632 (S.D.N.Y. 2013).  "A fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Mosdos Chofetz Chaim, Inc.* v. *RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 206 (S.D.N.Y. 2014).  A claim alleging the existence of a fiduciary duty "usually is not subject to dismissal

under Rule 12(b)(6)," because "ascertaining the existence of a fiduciary relationship inevitably requires a fact-specific inquiry." *Monterey Bay Mil. Hous., LLC* v. *Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 706 (S.D.N.Y. 2021) (citing *Abercrombie* v. *Andrew Coll.*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006); *Mosdos Chofetz Chaim, Inc.*, 14 F. Supp. 3d at 208) (internal citations omitted); *see also Musalli Factory For Gold & Jewellry* v. *JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 26 (S.D.N.Y. 2009) ("New York courts generally avoid dismissing a claim of breach of fiduciary duty under Rule 12(b)(6) because it usually involves a question of fact: whether someone reposed trust and confidence in another who thereby gains a resulting superiority or influence."), *aff'd sub nom. Musalli Factory for Gold & Jewellry Co.* v. *JPMorgan Chase Bank, N.A.*, 382 F. App'x 107 (2d Cir. 2010) (summary order).

Here, Appellant pleaded no facts that plausibly alleged a fiduciary relationship between the Trustee and Appellant.  Instead, he offered only a conclusory allegation that "[a]t all pertinent times herein, the Trustee was under a fiduciary obligation to the Debtor and [Appellant] as the sole security holder in the Debtor[.]"  (Adversary Compl. ¶ 62).  This assertion is plainly insufficient to survive a motion to dismiss, and Appellant has otherwise failed to allege facts establishing that the Trustee owed any fiduciary duty to Appellant.  As such, the Bankruptcy Court did not err in dismissing Appellant's claims for breach of fiduciary duty for failure to state a claim.

**CONCLUSION**

For the reasons set forth above, the Trustee's motion to dismiss is GRANTED with respect to the Bankruptcy Court's Sanctions Order (21 Civ. 8087) and Interim Fee Order (21 Civ. 8090).  Further, the Bankruptcy Court's Dismissal Order (21 Civ. 8093) is AFFIRMED.  The Clerk of Court is directed to docket this Opinion in Case Nos. 21 Civ. 8087, 21 Civ. 8090, and 21 Civ. 8093; to terminate all pending motions; to adjourn all remaining dates; and to close these three cases.

SO ORDERED.

Dated:    July 18, 2022
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

35